IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDWARD ROBERSON, R60232, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 19-cv-1189-DWD ) |
| ANTHONY WILLS¹, BRIAN EVINGER, JOHN McCALEB, | ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Edward Roberson, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pontiac Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 concerning events that occurred at Menard Correctional Center (Menard). (Doc. 26). Upon initial review of the Second Amended Complaint, the Court identified two claims against the named defendants. (Doc. 28). The operative claims concern conditions of confinement in a segregation cell in July and August of 2019, and a strip search prior to admission to segregation for that same stay. Defendants Evinger and McCaleb filed a Motion for Summary Judgment on the issue of exhaustion of administrative remedies (Doc. 70), and Plaintiff responded (Doc. 73). The Court now finds it appropriate to grant the Motion for Summary Judgment because the Defendants

---

¹ Anthony Wills was added to this lawsuit for the sole purpose of helping identify the Doe defendants. (Doc. 28 at 11). The Doe defendants were identified on July 1, 2022, so Wills is no longer a necessary party to this case. (Doc. 52). The Clerk is **DIRECTED** to **TERMINATE** Defendant Wills.

have met their burden to demonstrate that Plaintiff failed to exhaust his administrative remedies as to all claims presented in this lawsuit.

## BACKGROUND

Plaintiff alleged that on July 26, 2019, prison officials subjected him to an unjustified rectal cavity search. (Doc. 26 at 9-10). Upon arrival at segregation, Defendant John Doe Segregation Intake Officer (now identified as John McCaleb), subjected him to a second cavity search despite knowing that he had just been searched and had been in continuous presence of the prison officials from the time of the first search to the second. (*Id.* at 10). After the second strip search, Plaintiff was placed in a filthy segregation cell. (*Id.* at 11-12). The cell was infested with insects, the walls and toilet bowl were covered in feces, there was a pool of water on the floor, the mattress was urine-soaked, there was no running water, and it was extremely hot. Plaintiff was not given any bedding or toiletries. Correctional Officers John Doe Anderson (now identified as Brian Evinger) and John Doe Metcalf (now deceased) were aware of the conditions but failed to render any meaningful assistance. Plaintiff remained in the cell for 14 days.

Based on the allegations in the Second Amended Complaint, which are more fully recounted in the Order of Initial Review (Doc. 28), the Court allowed two claims to proceed beyond initial review:

> Claim 2:   Eighth Amendment claim Defendant Evinger for subjecting Plaintiff to unconditional conditions of confinement when he was confined to segregation in July and August of 2019; and
>
> Claim 3:   Fourth Amendment claim against Defendant McCaleb for subjecting Plaintiff to an unreasonable rectal cavity search.

(Doc. 28 at 6).  Plaintiff sought compensatory and punitive damages.  (Doc. 26 at 16).

The Defendants have identified two grievances that are potentially relevant to this lawsuit.  (Doc. 71).  Plaintiff filed a response to the Motion for Summary Judgment wherein he argued that the Motion should be dismissed or denied because he did not get proper timely notice of it.  (Doc. 73).  Defendants moved to strike Plaintiff's response and to sanction him for inaccurate representations made in the response.  (Doc. 74).

## FINDINGS OF FACT

Plaintiff filed a grievance on August 8, 2019, concerning a search on or about July 26, 2019.  The grievance was assigned grievance no. 180-08-19.  (Doc. 71-1 at 261-262).  In the grievance Plaintiff alleged:

> On 7-26-19 approx. 10:45am several c/o three being different ranking whiteshirts approached at my cell west-2 24 and commanded I step out of the cell once I complied I was escorted to bullpin located at the front of the gallery once in the bullpin several other inmates was also in the bullpin being called out one by one into the shower area where they were then stripsearched and leaded to the bullpin located on the odd side of the cell house second from last I was called into the shower area where I was to be strip searched after being told to bend over a second time by the c/o conducting the strip search I complaint about the search altogether.  The c/o then call me stupid and stated who ever I was listen to I need to stop because they were misleading me he then called over one of the whiteshirts and he too had started calling me stupid and stated that I was a pedophile and did not have any rights and that he was going to let all the inmate read my legal documents and trial transcripts after he send me to the hole that way I'll have to sign into protective custody because all the gang bangs will be after my neck and it has been two weeks and I still have not received my property nor legal documents.

On August 19, 2019, Plaintiff's counselor responded that there was no misconduct during the strip search, and the searches were routine for dangerous contraband, the counselor also noted the property issue had been resolved.  (Doc. 71-1 at 261-262).  On September

5, 2019, the ARB received an appeal of the grievance from Plaintiff, but it was returned to him because he had not submitted it for second level review at his institution. (Doc. 71-1 at 260). The grievance was never resubmitted.[2]

Along with his appeal of grievance 180-08-19, Plaintiff submitted a letter to the ARB wherein he provided further details about the strip searches, and also about the condition of his segregation cell. (Doc. 71-1 at 263).

On August 22, 2019, Plaintiff submitted a grievance about the second strip search that occurred on July 26, 2019, when he arrived at segregation. (Doc. 71-3 at 81). The grievance was assigned number 15-9-19. Plaintiff wrote:

> On 7-26-19 approx. 10:45am c/o appeared at my cell west 224 and escorted me out into a bullpin where one by one they commanded inmates into the shower area where they conduct a strip search after I was strip searched I was brought to segregation where I was strip search yet again in the seg shower on four gallery. Come five days later on or about 7-31-19 before being escorted to my ticket hearing with the justice committee two officers approached my cell, n2-253 one of the officers order me to strip for a search but once I pull down my underwear this officer gawked at my penis then immediately stop the search and told me to get dress then once I step out the cell I was pat search and unbeknownst to me the officer who conducted the strip search was a homosexual, and once again on 8-16-19 I was strip search before going to speak with investigators.

(Doc. 71-3 at 81). As relief for the grievance, Plaintiff stated that he believed he did not need to be strip searched every time he was escorted somewhere from his segregation cell because he does not go anywhere and so it was not possible for him to possess contraband in segregation. In response, his counselor indicated, "strip searching policy

---

[2] The internal grievance log from Menard shows that grievance 180-8-19 was returned by the counselor on August 20, 2019, but it was never resubmitted for second level review by the grievance office. (Doc. 71-2 at 1).

is governed by AD.05.01.113 searches of inmates & by ID. 05.01.001 segregation unit procedures and will be strictly adhered to for the safety and security of the facility." Plaintiff did not appeal further at the prison level, nor did he transmit this grievance to the ARB.[3]

## CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). After hearing evidence, finding

---

[3] The ARB IGRV log does not show receipt of grievance 15-9-19 for appeal, though it does reflect receipt of the appeal of the first grievance about the strip search—180-08-19. (Doc. 71-1 at 2). Additionally, the internal grievance log from Menard indicates that grievance 15-5-19 was returned to Plaintiff with the counselor's response on September 6, 2019, and it was never received for second level review. (Doc. 71-2 at 1).

facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal. *See e.g.*, *Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). The regulations first require an inmate to file his grievance with his counselor within 60 days of the discovery of an incident, occurrence, or problem that gave rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). Administrative regulations require the grievance "contain factual details regarding each aspect of the offender's complaint,

including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c).

If the complaint is not resolved through the counselor, the grievance may be submitted to a grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (CAO).  20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance.  *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB).  20 ILL. ADMIN. CODE § 504.850(a).  The ARB must receive the appeal within 30 days of the date of the CAO's decision.  *Id.*  The inmate must attach copies of the responses from the grievance officer and CAO to his appeal.  *Id.*  The ARB submits a written report of its findings and recommendations to the Director, who them makes a final determination.  20 ILL. ADMIN. CODE § 504.850(d), (e).

B. Analysis

The Court finds that the Motions for Summary Judgment can be resolved on paper without a *Pavey* hearing.  The Defendants have submitted credible evidence in support of their contention that Plaintiff did not fully exhaust any grievance relevant to the claims presented in this case, and Plaintiff has not refuted that evidence.  The Court acknowledges that Plaintiff filed a "response" to the Defendants' Motion for Summary Judgment, but his response does not address the merits of the disputed issues.  Instead,

Plaintiff argues in his response (Doc. 73)[4] that there was a significant delay in his receipt of the Motion for Summary Judgment, which he attributes to staff misconduct or an IDOC 'conspiracy.' Rather than address the merits of the motion, which he admits he eventually received, Plaintiff simply argues that the Defendants' Motion should be denied because he did not receive it in a timely fashion. The Court is not persuaded by this line of argument. Even if Plaintiff received the Motion in a delayed fashion, he could have requested an extension of time to respond, or he could have responded rather than file the non-substantive response he filed. Given Plaintiff's apparent lack of effort to respond to the Motion, the Court considered the motion on the face and determined that the issues could be resolved on paper.

First, as to Claim 2 against Defendant Evinger concerning the conditions of confinement in the segregation cell, the record contains no proof of a grievance that exhausts this claim. The Defendants appended over 300 pages of grievance documentation to their motion for summary judgment, and after a thorough review of the documents, the Court did not identify any grievance filed in July, August, September, or October of 2019 that discussed the conditions of confinement in Plaintiff's segregation cell during July and August of 2019. The closest mention of this issue arose in Plaintiff's letter to the ARB that accompanied grievance 180-08-19. In that letter, Plaintiff complained about the conditions of his cell, but in the grievance itself, Plaintiff did not

---

[4] The Defendants' moved to strike Plaintiff's response as untimely, and for sanctions on the premise that he accused counsel of a 'conspiracy' and allegedly lied about his access to a copy of the Defendants' Motion. (Doc. 74). Defendants contend in their motion that they have support for their theory that Plaintiff lied, but they did not actually file the exhibit they reference. Ultimately, the Court finds in the Defendants' favor, so it is not inclined to take further action by striking Plaintiff's response or sanctioning him. The Motion to Strike and for Sanctions (Doc. 74) is **DENIED**.

mention cell conditions. An extraneous letter included with a grievance is not sufficient for exhaustion purposes.

The Court notes that it appears the grievance procedure was available to Plaintiff during the relevant timeframe because he submitted grievance 180-08-19 and got a response from his counselor, and he submitted other grievances that he fully exhausted. For example, on August 10, 2019, Plaintiff submitted a grievance that suggested he may have been a victim of a sexual assault. (Doc. 71-1 at 250). He fully exhausted this grievance at all levels. (*Id.* at 248-251). He also pursued a grievance through all levels of review in November 2019 concerning disciplinary proceedings. (Doc. 71-1 at 222-224). Both of these grievances suggest that during the relevant timeframe the grievance procedure was available to Plaintiff.

The internal grievance records from Menard also indicate that the facility did not receive any grievances from Plaintiff from July -October of 2019 concerning the conditions of a segregation cell. (Doc. 71-2 at 1). Grievances were received about officers banging on cell bars, about dental issues, about spoiled food, about issues with staff, and about personal property, but nothing was received about the condition of Plaintiff's cell. Defendants have carried their burden to establish that Plaintiff did not exhaust Claim 2 against Defendant Evinger, so this claim is dismissed without prejudice.

Second, the Court concludes that Plaintiff did not adequately present his allegations about the strip search raised in Claim 3 for purposes of exhaustion, and even if he did, this claim must be dismissed because he has not identified any basis for monetary recovery. In Claim 3, Plaintiff alleges that Defendant McCaleb violated his

Fourth Amendment rights when he conducted a strip search upon Plaintiff's arrival to segregation on July 26, 2019. Plaintiff alleged that the strip search should not have occurred because he had just been searched by guards before being brought to segregation, and he was in the presence of guards for the entire intervening time from the first to second search.

An inmate retains a limited Fourth Amendment right to bodily privacy. *Henry v. Hulett*, 969 F.3d 769 (7th Cir. 2020). "[W]hen evaluating a prisoner's Fourth Amendment claim regarding a strip or body cavity search, courts must assess the search for its reasonableness, considering "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* at 779, *quoting Bell v. Wolfish*, 441 U.S. at 559. "When evaluating reasonableness, in the context of strip searches of prisoners as in others, courts must afford prison administrators "wide-ranging deference in the adopting and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 783, *citing Bell* at 547.

The Defendants identified two potentially relevant grievances. The first grievance—180-08-19—does not mention the strip search performed by Defendant McCaleb, so it cannot be considered adequate to exhaust Claim 3. The second grievance—15-9-19—mentions the July 26, 2019, strip search in passing. Plaintiff merely alleges, "after I was strip searched I was brought to segregation where I was strip search yet again in the seg shower on four gallery." (Doc. 71-3 at 81). As relief for this grievance, Plaintiff alleged, he believed he should not have to strip search every time he is escorted

somewhere from segregation. (*Id.*). In response to the grievance, the counselor indicated the strip search policy is governed by administrative and internal directives and is strictly adhered to for institutional security.

The Defendants argue that Plaintiff did not properly identify staff members who searched him in grievance 15-9-19, nor did he provide identifying information. They argue that, as such, the grievance was insufficient to give the facility notice of what occurred or to give them a chance to remedy the issue. They additionally argue that Plaintiff did not exhaust this grievance because he did not appeal it at the facility, nor did he transmit it to the ARB. Finally, they argue the grievance process was not unavailable because Plaintiff did not mention unavailability in his complaint, and he successfully filed numerous grievances about other issues.

The Defendants are correct that grievance 15-9-19 does not contain sufficient information to put the facility on notice that Plaintiff alleges Defendant McCaleb violated his rights during the second strip search. The IDOC grievance procedure requires that if an inmate does not know the name of someone involved in a grievance issue, he should provide as much descriptive information as possible. 20 ILL. ADMIN. CODE § 504.810(c). Plaintiff provides virtually no information about the person who performed the second strip search, so the text of the grievance does not follow the IDOC grievance procedures. Additionally, none of Plaintiff's factual assertions in this grievance make it apparent that something about the second search was unreasonable. The search is mentioned only in a single sentence. The grievance itself seems more focused on the fact that Plaintiff was searched each time he left his segregation cell, rather than on the searches that lead-up to

his segregation placement. Notably, as relief, Plaintiff alleges he should not need to be searched every time he is escorted somewhere from his cell. The demand for relief supports the notion that this grievance was not sufficient to give the facility notice or an opportunity to address any potential Fourth Amendment issue with the second strip search on July 26, 2019.

The Defendants also argue that the grievance was not fully exhausted because Plaintiff did not submit it for second level review, or to the ARB. This position is supported by the evidence. Neither the internal grievance log at Menard, nor the IGRV log from the ARB demonstrate that Plaintiff pursued this grievance beyond his counselor's response. (Doc. 71-1 at 1-2; Doc. 71-2 at 1). As such, the grievance was not properly pursued through all levels of the grievance process, even if it was substantively sufficient to raise a claim against Defendant McCaleb.

Even if the Court concluded that the grievance was sufficient to exhaust Claim 3 against Defendant McCaleb, this case still cannot proceed for a more fundamental reason. The Prison Litigation Reform Act ("PLRA") provides that "[n]o Federal civil action may be brought by a prisoner…for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e. "[Plaintiff's] claim fails on the basic proposition that he has sued for damages under § 1983 and alleged a constitutional tort ([a Fourth] Amendment violation) without developing evidence of a recoverable injury." Lord v. Beahm, 952 F.3d 902, 905 (7th Cir. 2020). A plaintiff cannot recover money damages absent a showing of any type of harm. Id.

Although the Seventh Circuit did not reach the issue of damages in *Henry v. Hullett*, 969 F.3d at 787, the dicta suggests that a Plaintiff would not be able to recover compensatory damages on a Fourth Amendment strip search claim. The defendants in *Henry* also argued that an inmate who proceeded on a Fourth but not an Eighth Amendment claim about a strip search would be unable to recover punitive damages because both punitive damages and an Eighth Amendment claim would require a showing of subjective intent, whereas a Fourth Amendment claim requires only an objective showing about the reasonableness of the search.[5] The Seventh Circuit did not rule on this argument because it was raised for the first time on appeal, but this Court finds this logic relevant and compelling. Mapping this logic to this case, the Court already determined at initial review that Plaintiff's allegations were insufficient to maintain an Eighth Amendment claim about the second strip search (Doc. 28 at 8-9) because there were no allegations that suggested the defendant acted with the intent to harass or punish, so it naturally follows that Plaintiff would not be able to establish punitive damages related to his Fourth Amendment claim. Even if Plaintiff could seek punitive damages related to a Fourth Amendment search, he provided zero factual allegations about the emotional or mental impact of the events in Claim 3, so there is no basis for a punitive damage award in this case. The damages analysis leads to the

---

[5] "A jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Alexander v. City of Milwaukee*, 474 F.3d 437, 453 (7th Cir. 2007) *citing Smith v. Wade*, 461 U.S. 30, 56 (1983). "The Eighth Amendment safeguards prisoners against the use of searches that correctional officers subjectively intend to use as a form of punishment." *Henry*, 969F.3d at 781. By contrast, the Fourth Amendment protects against searches that are performed in an objectively unreasonable manner, for an unreasonable purpose, or in an unreasonable place. *Id.*

conclusion that Plaintiff has not pled a sufficient Fourth Amendment claim related to the strip search, so the claim could be dismissed for failure to state a claim.[6]

Based on the foregoing analysis, the Court concludes that Plaintiff failed to prepare a grievance sufficient to exhaust Claims 2 or 3 against Defendants Evinger or McCaleb, so his claims in this lawsuit are unexhausted and must be dismissed without prejudice. Even if Plaintiff's grievance about Claim 3 was sufficient, Plaintiff still may not proceed on Claim 3 because he has not sufficiently shown that he would be entitled to damages under the PLRA or otherwise.

## DISPOSITION

The Motion for Summary Judgment on the issue of exhaustion (Doc. 70) is **GRANTED**. Claims 2 and 3 as identified by the Court from the Amended Complaint (Docs. 26, 28) are **DISMISSED** without prejudice for his failure to exhaust administrative remedies. In the alternative, Claim 3 is dismissed for failure to state a claim because Plaintiff does not have a valid basis for compensatory or punitive damages.

If Plaintiff wishes to appeal this Order, he must file a notice of appeal with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(1)(A). If Plaintiff chooses to appeal, he will be liable for the $505.00 filing fee irrespective of the outcome of the appeal. See Fed. R. App. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-56 (7th Cir. 2008). Moreover, if the appeal is found to be nonmeritorious,

---

[6] Although the Court regrettably did not catch this flaw with Plaintiff's claim during the first review of the complaint, 28 U.S.C. § 1915A(b) and § 1915e(2)(B)(ii) require dismissal of a complaint or any portion of it that fails to state a claim. Plaintiff's complaint fails to state a claim as explained above, so even without the exhaustion analysis, this case would be subject to dismissal.

Plaintiff may incur another "strike" under 28 U.S.C. § 1915(g). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. Fed. R. App. P. 4(a)(4). A Rule 59(e) motion must be filed no later than 28 days after the entry of judgment, and this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

Dated: July 28, 2023

_____
DAVID W. DUGAN
United States District Judge